UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

M.S.,

    Plaintiff,                                        Civil No. 08-907-HA

        v.                                     OPINION AND ORDER

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

HAGGERTY, Judge:

      Plaintiff's mother brings this action for judicial review of the defendant Commissioner's final decision affirming the cessation of plaintiff's child Supplemental Security Income benefits (SSI) under the Social Security Act, 42 U.S.C. § 401 *et seq.* (the Act). This court has jurisdiction under 42 U.S.C. §§ 401-433 and 1381-1383(c)(3) (which incorporates 42 U.S.C. § 405(g)). For the following reasons, the court reverses the Commissioner's decision and remands for restoration of benefits.

1 -- OPINION AND ORDER

Plaintiff was determined to be eligible for disability benefits as of November 1, 1999, because of severe impairments that met Listing 112.11 of Appendix 1. Tr. of Admin. R. (hereinafter, Tr.) 194. After a "continuing disability review," plaintiff was found to have experienced medical improvement and his eligibility for disability benefits ceased on December 1, 2003. In June 2007, an Administrative Law Judge (ALJ) conducted a hearing at which plaintiff and his parents testified. On July 13, 2007, the ALJ ruled that plaintiff was no longer eligible for benefits. The Appeals Council denied plaintiff's request for review, rendering the ALJ's decision final. Plaintiff now seeks judicial review of that final decision.

## STANDARDS

The parties agree that this action is a benefits cessation action based upon plaintiff's alleged medical improvement. Once a claimant is found disabled, a presumption of continuing disability arises. *See Bellamy v. Sec'y of Health & Human Svcs.*, 755 F.2d 1380, 1381 (9th Cir. 1985); *Mendoza v. Apfel*, 88 F. Supp. 2d 1108, 1113 (C.D. Cal. 2000). A claimant's continued entitlement to benefits is reviewed periodically. *See* 20 C.F.R. §§ 404.1594(a), 416.994(a). Although the claimant retains the burden of proof, the presumption of continuing disability shifts the burden of production to the Commissioner to produce evidence to meet or rebut the presumption. *See Bellamy*, 755 F.2d at 1381.

The Commissioner has established a three-step sequential evaluation process for determining whether a person's disability has ended. At step one, the ALJ must determine whether or not there has been medical improvement. At step two, the ALJ must determine whether the impairment present at the comparison point decision (CPD) now meets or equals the

Listing that it met or equaled at the time of the CPD. At step three, the ALJ must determine whether the claimant's current impairments are disabling. 20 C.F.R. § 416.994a(b)(1)-(3).

A "medical improvement" is defined as a "decrease in the medical severity of the impairment which was present at the time of the most recent favorable medical decision." 20 C.F.R. § 404.1594(b)(1). The determination of a decrease in medical severity must be "based upon changes (improvement) in the symptoms, signs and/or laboratory findings associated with the impairment." *Id*.

To determine whether the claimant's "signs, symptoms, and laboratory findings" have shown medical improvement, the ALJ compares the claimant's condition at the comparison point date to the claimant's present condition. *See* 20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1) (vii).

A childhood disability assessment follows a similar three-step sequential evaluation. The Commissioner will consider: (1) whether the child is working; (2) whether the child has a medically determinable severe impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the listings. 65 Fed. Reg. at 54,778 (to be codified at 20 C.F.R. § 416.924).

A child's functional limitations will be evaluated in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself or himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

An impairment "causes marked and severe functional limitations if it meets or medically equals the severity of a set of criteria for an impairment in the listings, or if it functionally equals

the listings." 20 C.F.R. § 416.924 (d). A "marked limitation" seriously interferes with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). In comparison, an "extreme limitation" is more significant, and interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i).

A medically determinable impairment or combination of impairments "functionally equals" a listed impairment if it results in "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(d).

Plaintiff asserts that his impairments continue to meet Listing 112.11 A and B (Attention Deficit Hyperactivity Disorder, or ADHD). 20 C.F.R. pt. 404, subpt. P, app. 1, pt. B, Listing 100.02A. The required level of severity for Listing 112.11 is met when the requirements in sections A and B are satisfied. Section A requires medically documented findings of the following: 1) marked inattention; 2) marked impulsiveness; and 3) marked hyperactivity.

Section B criteria for children aged three to eighteen requires at least two of the appropriate age-group criteria in section B2 of Listing section 112.02. Section B2 of 112.02 indicates that for children aged three to eighteen, there must be marked impairment in age-appropriate cognitive/communicative function; marked impairment in age-appropriate social functioning; marked impairment in age-appropriate personal functioning; or deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner. 20 C.F.R. pt. 404., subpt. P, app. 1, Rule 112.11.

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999) (citations omitted); *Andrews v.*

*Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted).  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citations and quotations omitted).  This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  *Tackett*, 180 F.3d at 1098 (quotation and citation omitted).  The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either outcome.  *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citations omitted).

**<u>RELEVANT BACKGROUND</u>**

Plaintiff was born April 15, 1995.  Doctor J. Weber, M.D., began treating plaintiff when plaintiff was five weeks old.  Observations made by this physician describe plaintiff as suffering from out-of-control behavior, hypervigilence, aggression, impulsivity, poor concentration, and excessive activity.  Tr. 234, 466, 472, 503.

Plaintiff underwent psychological evaluation with the Center for Human Development and the Center for Child Development and Behavior Clinic at age four.  Tr.459, 517-20.  There plaintiff was assessed with emotional regulation problems, appositional behavior, aggression, hyperactivity, impulsivity, and possible learning disabilities. Tr.458.

Plaintiff's general assessment of functioning was rated at a 59 in September 1999, and at 40 in December 1999. Tr.517, 520.

Before plaintiff was five years old he was determined to be disabled due to ADHD. Tr.194. By January 2002, plaintiff was diagnosed as possibly bipolar, and was prescribed lithium. Tr.30, 567, 570.

On November 26, 2003, plaintiff underwent testing and evaluation performed by psychologist David R. Starr, Ph.D. Tr. 554-58. Doctor Starr reported that plaintiff functioned in the low average range, and that he "had extreme difficulty understanding the meaning of words and his verbal concept formation was poor." Tr. 557. The doctor opined that plaintiff understood the expectations of his involvement in social situations and that his ability to discern essential from nonessential visual information was in the average range. *Id*. Doctor Starr assessed plaintiff with a Children's Global Assessment Scale (CGAS) of 50, and diagnosed severe symptoms of impairment in social functioning with a verbal memory well below average. Tr. 558.

Following this evaluation, Kathy Bates-Smith, Ph.D., a State Agency medical examiner, reviewed the file. Tr. 573-78. She concluded that plaintiff was not markedly impaired in social functioning or in concentration, persistence or pace. Tr. 575-77.

Doctor Bates-Smith noted that plaintiff's teacher indicated only slight problems in attending and completing tasks, and that plaintiff has no problems relating to others, and is liked by classmates. *Id*. She opined that plaintiff no longer met Listing 112.11. Tr. 576.

Accordingly, relying primarily upon portions of Dr. Starr's opinions and Dr. Bates-Smith's conclusions, the ALJ found that plaintiff's medical improvement occurred as of December 1, 2003. Tr. 194-209.

However, plaintiff's treatments and evaluations – both prior to and subsequent to 2003 – cast doubt on this conclusion. In 2004 Dr. Weber noted that he "never had a more problematic behavioral concern to manage" and that plaintiff's behavioral concerns "have eluded definitive diagnosis." Tr. 560. Doctor Weber opined that if plaintiff were "not in a family setting he would be incarcerated." *Id*.

In 2007, school personnel suggested that symptoms of obsessive compulsive disorder and anxiety interfered with plaintiff's learning progress. Tr. 579, 580. Plaintiff's CGAS score remained at 50, and his anger was "out of control" with violent outbursts. Tr. 112. Plaintiff's psychiatrist diagnosed him with Bipolar I, Oppositional Defiant Disorder, and ADHD. Tr. 111. In January 30, 2008, Dr. Mosiman noted a diagnosis of bipolar disorder and commented that plaintiff had "little response" to medications. Tr. 93.

The record contains a number of other evaluations and opinions. Where necessary, these evaluations and opinions regarding plaintiff are addressed below.

## QUESTIONS PRESENTED

After reviewing the parties' briefing, plaintiff's primary arguments are identified as challenges to (1) the ALJ's omissions and implicit rejections pertaining to plaintiff's bipolar disorder diagnoses; (2) the ALJ's rejection or discounting of opinions from treating physician Dr. Weber and the ALJ's inconsistent evaluation of Dr. Starr's opinions; and (3) the ALJ's insufficient consideration of non-medical or lay testimony.

7 -- OPINION AND ORDER

**ANALYSIS**

Because this is a cessation of benefits case, the primary issue is whether plaintiff's medical condition has improved. It is undisputed that plaintiff was disabled in 1999 due to his mental impairments. The question presented is whether his condition improved after that date, to the extent that plaintiff became ineligible for SSI benefits by December 2003.

In so concluding, the ALJ refused to consider evidence that plaintiff suffered from bipolar disorder on grounds that there was insufficient medical documentation supporting this diagnosis, and discounted the opinions of Dr. Weber and some opinions from Dr. Starr. These issues are addressed in turn.

    **1.    Bipolar disorder evidence**

The ALJ noted that "[o]bsessive compulsive disorder (OCD) and bipolar disorder have been mentioned in the record." Tr. 199. However, the ALJ rejected further consideration of those references because "there is no confirmation of the referred diagnoses by the use of standardized psychological testing." *Id*. This conclusion is insufficient to meet or rebut the legal presumption of plaintiff's continuing disability. *See Bellamy*, 755 F.2d at 1381.

Doctor Ed Mosiman documented examinations, evaluations and standardized testing of plaintiff from 1997 through 2007. Tr. 536-40 (ADHD assessed in 1997); Tr. 95, 97, 99, 105, 107, 111 (diagnoses of bipolar disorder multiple times in 2007). Doctor Weber documented discussions with plaintiff's mother regarding a possible bipolar disorder diagnosis in August 2000. Tr. 30. On March 6, 2002, Dr. Weber examined plaintiff and noted "ADD/Bipolar." Tr. 567.

The ALJ's decision to disregard evidence of plaintiff's bipolar disorder because of a lack of a "confirmation" of the diagnosis was error. If the record before the ALJ precludes the proper evaluation of the evidence, the ALJ's duty to further develop the record is triggered. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence") (citation omitted).

An ALJ has "a special duty to fully and fairly develop the record and assure that the claimant's interests are considered." *Hayes v. Astrue*, 2008 WL 686867, *2 (Ninth Circuit March 12, 2008) (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam).

Some responsibility to develop the record rests with the ALJ in part because disability hearings are inquisitorial rather than adversarial in nature. *See Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Administrative regulations also mandate the ALJ to look "fully into the issues" at hearings. 20 C.F.R. §§ 404.944 and 416.1444; *see also Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989).

Fulfilling the duty to develop the record may compel the ALJ to consult a medical expert or to order a consultative examination. *See* 20 C.F.R. §§ 404.1519a and 416.919a. If the evidence presented is inadequate to determine disability, the ALJ is required to re-contact medical sources for additional information. 20 C.F.R. § 416.912(e); *see also Thomas*, 278 F.3d at 958 (citation omitted) (the requirement for seeking additional information is triggered when evidence from a treating medical source is inadequate to make a determination as to a claimant's disability).

9 -- OPINION AND ORDER

Relatedly, an ALJ must take reasonable steps to ensure that issues and questions raised during the presentation of medical evidence are addressed so that the disability determination is fairly made on a sufficient record of information. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998, as amended Jan. 26, 1999); *see also* 20 C .F.R. §§ 404.1527(c)(3) and 416.927(c)(3) (explaining how an ALJ may obtain additional evidence where medical evidence is insufficient to determine whether claimant is disabled); 20 C.F.R. §§ 404.1512(e) and 416.912(e) (obtaining additional information from treating doctors).

The ALJ acknowledged that the record contained references to a possible diagnosis of bipolar disorder, but then chose to disregard that evidence. This error, by itself, would compel a remand for further proceedings. However, further analysis compels a remand for benefits.

### 2. Medical opinions

An ALJ may reject the contradicted opinion of a treating or examining physician by stating specific and legitimate reasons, and may reject an uncontradicted opinion from a treating or examining physician by providing clear and convincing reasons, supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995) (ALJ must provide clear and convincing reasons for rejecting uncontroverted expert opinions, and must provide specific, legitimate reasons for rejecting controverted expert opinions); *see also Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988) (clear and convincing reasons must be provided to support rejection of a treating physician's ultimate conclusions).

Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than a reviewing

physician's conclusions. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Lester*, 81 F.3d at 830; *see also Carmickle v. Comm'r.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (opinions from doctors with the most significant clinical relationship with the claimant are generally entitled to more weight than opinions from doctors with lesser relationships).

Moreover, an ALJ must give weight not only to the treating physician's clinical findings and interpretation of test results, but also to the doctor's subjective judgments. *Lester*, 81 F.3d at 832-33 (citing *Embrey*, 849 F.2d at 422). Although a treating physician's opinion "is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989)). An ALJ need not accept a treating physician's opinion that is conclusory or brief. *Tonapetyan*, 242 F.3d at 1149 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Similarly, an ALJ may discredit the opinions of a treating physician that are unsupported by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ need not accept the opinion of a treating physician "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole"); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion largely based on a claimant's discredited subjective complaints or presenting inconsistencies between the opinion and the medical record or a claimant's daily activities).

Plaintiff first argues that the ALJ failed to properly evaluate Dr. Weber's opinions. This court agrees. In concluding that plaintiff's medical improvement compelled terminating SSI benefits. The ALJ discounted treating physician Dr. Weber's opinions for a variety of reasons:

11 -- OPINION AND ORDER

- Doctor Weber was "clearly trying to advocate" for plaintiff without an objective basis (Tr. 202);

- there are no progress notes from Dr. Weber from December 3, 1999 through November 1, 2001, which – to the ALJ – "suggests [plaintiff] was doing well (*id.*);"

- Doctor Weber "was probably unaware" of who prescribed lithium to plaintiff, and so "really has no first-hand knowledge" of whether plaintiff needs that medication or the severity of any underlying impairment (Tr. 203); and

- Doctor Weber's opinions regarding plaintiff's mental health are "not fully reliable" because Dr. Weber is not a psychologist (*id.*).

For those foregoing reasons, the ALJ declared that "I do not give any weight to Dr. Weber's statements" in a letter written in 2004. Tr. 203. In that letter, Dr. Weber opined that he had "never had a more problematic behavioral concern to manage," plaintiff's "behavioral concerns and actions . . . have eluded definitive diagnosis," and that if plaintiff's "behaviors are not diagnosed eventually and treated effectively, there is no way, in my opinion, that he could function normally in society." Tr. 560.

The ALJ's rationalizations for disregarding these views are insufficient. Characterizing the medical opinions as "advocacy" is specious. Doctor Weber's evaluations arose from his role as plaintiff's pediatrician. The record contains no evidence that Dr. Weber's professional relationship with plaintiff has given rise to improper bias or diminished objectivity.

The ALJ's assumption that plaintiff's general health must have been good from 1999 through 2001 is simply wrong. The record reflects that plaintiff was seen medically approximately nine times between 1999 and November, 2001. Tr. 27-34. Doctor Weber's

signature or initials appear on some of these records. Moreover, the frequency with which Dr. Weber may have seen plaintiff during that period is not strongly indicative of the weight to be attributable to medical evaluations he has made in the normal course of his treatment of plaintiff.

The ALJ's assumption that Dr. Weber has no first-hand knowledge of plaintiff's mental impairments, and the ALJ's conclusion that Dr. Weber's views are entitled to no weight because Dr. Weber is not a psychologist, are insufficient grounds to reject those views. A review of the record establishes that Dr. Weber was thorough and professional in maintaining a careful understanding of plaintiff's psychiatric history, and in coordinating his treatment of plaintiff with plaintiff's mental health treatments.

The court also notes that the defense counsel provides no response to plaintiff's argument that the ALJ failed to provide sufficient reasons for discounting portions of Dr. Starr's opinions. That argument is also well-taken. The ALJ's analysis relied upon aspects of Dr. Starr's opinions to support the conclusion that plaintiff underwent sufficient medical improvement, but the ALJ dismissed Dr. Starr's opinion that plaintiff's CGAS was 50 on speculation that Dr. Starr was concerned about plaintiff's dangerous behaviors. Tr. 204-09. As noted above, Dr. Starr, a specialist, also reported that plaintiff functioned in the low average range, "had extreme difficulty understanding the meaning of words and his verbal concept formation was poor," and diagnosed severe symptoms of impairment in social functioning with a verbal memory well below average. Tr. 557-58. He also assessed plaintiff as suffering from marked restrictions in acquiring and using information and in social functioning. *Id.*

13 -- OPINION AND ORDER

The ALJ's selective emphases on portions of Dr. Starr's opinions, coupled with a disproportionate reliance upon Agency reviewing doctors, was improper. As established above, what constitutes a claimant's "medical improvement" is clear. There must be a decrease in the medical severity of the impairment which was present at the time of the most recent favorable medical decision. Moreover, the determination of a decrease in medical severity is measured by *changes* in the symptoms, signs and/or laboratory findings associated with the impairment. Such changes are evaluated by comparing the claimant's condition at the comparison point date to the claimant's present condition. *See* 20 C.F.R. §§ 404.1594(b)(7), 416.994(b)(1) (vii).

Instead of referring to changes in plaintiff's symptoms, or to laboratory findings, the Commissioner's belief that plaintiff's impairment improved is largely based upon an exercise in discrediting Dr. Weber and portions of Dr. Starr's evaluations. The Commissioner's decision is not supported by substantial evidence in the record as a whole.

This court concludes that the rationalizations presented for rejecting Dr. Weber's opinions– and portions of Dr. Starr's views – fall short of either the exacting standard for rejecting uncontroverted opinions (requiring clear and convincing reasons), or controverted expert opinion (requiring specific, legitimate reasons).

Because the ALJ failed to address evidence regarding plaintiff's diagnosis of bipolar disorder, and failed to provide legally sufficient reasons for rejecting these opinions and conclusions, this action must be remanded.

Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). The decision whether to remand for further proceedings or for immediate

14 -- OPINION AND ORDER

payment of benefits is within the discretion of the court. *Id.* at 1178. A reviewing court should credit evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited as true. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

Under these standards, remand for a finding of disability and an award of benefits is appropriate here. When the Commissioner provides inadequate reasons for rejecting the opinion of a treating or examining physician, that opinion is generally credited as true as a matter of law. *Widmark v. Barnhart*, 454 F.3d 1063, 1069 (9th Cir. 2006) (citations omitted); *see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Because it is clear from the record that, accepting this evidence as true, the ALJ would be required to continue plaintiff's eligibility for SSI, this court remands this action to the SSA to calculate and award benefits. *See Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004).

## **CONCLUSION**

Under the applicable standards, after giving the evidence in the record the effect required by law, plaintiff is entitled to reinstatement of his disability benefits. Accordingly, the final decision of the Commissioner is reversed, and this case (Civil No. 08-907-HA) is remanded to the Commissioner for the calculation and reinstatement of benefits to plaintiff.

IT IS SO ORDERED.

DATED this  24   day of November, 2009.

15 -- OPINION AND ORDER

        /s/ Ancer L. Haggerty
        Ancer L. Haggerty, Judge
        United States District Court

16 -- OPINION AND ORDER